United States District Court
Southern District of Texas

**ENTERED**

April 27, 2022

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-21-4117 |
| | § | (CRIMINAL NO. H-19-300-02) |
| ROBINO SIXTO ORTIZ-ODUMS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendant Robino Sixto Ortiz-Odums' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody ("Defendant's Motion") (Docket Entry No. 112).  The United States has filed the United States' Response to Ortiz-Odums's 28 U.S.C. § 2255 Motion ("Government's Response") (Docket Entry No. 118).  Based on a careful review of the parties' arguments, the court's recollection of the relevant proceedings, and the application of governing legal authorities, Defendant's Motion will be denied, and the corresponding Civil Action No. H-21-4117 will be dismissed.

### I.  Factual and Procedural Background

On January 19, 2019, the defendant, Robino Sixto Ortiz-Odums ("Defendant"), and his co-defendant, Kyrie Irving Castillo, conducted an armed robbery of an Amex Pawn Shop, a federal firearms

licensee in Houston, Texas.[1]  Defendant was armed with a black
pistol; Castillo was unarmed but carrying a duffel bag.[2]  Defendant
threatened the store's manager, employees, and customers, telling
them not to move while waving the pistol in their direction.[3]
Meanwhile, Castillo broke the store's glass cases that contained
firearms and placed fourteen of them in the duffel bag.[4]  Defendant
and Castillo then left the store.[5]  The total loss from this
robbery was $6,899.25.[6]

On January 29, 2019, Defendant conducted an armed robbery of
a woman's car in a parking lot in Houston.[7]  At around 6:42 a.m.
the woman was standing next to her car, a blue 2003 Toyota Matrix,
which was running.[8]  Defendant approached the woman from behind,
held a pistol to her back, and said:  "Don't move, give me the
keys."[9]  Defendant then jumped into the Toyota Matrix and drove

---

[1]Plea Agreement of Robino Sixto Ortiz-Odums, Docket Entry
No. 79, p. 5 ¶ 9.  For identification purposes, all page numbers
refer to the pagination imprinted at the top of the page by the
court's Electronic Case Filing ("ECF") system.

[2]Id.

[3]Id.

[4]Id.

[5]Id.

[6]Id. at 7.

[7]Id. at 5-6.

[8]Id. at 5.

[9]Id. at 5-6.

off.[10]   A few hours later the police located the Toyota Matrix several miles away.[11]

Meanwhile, near the area the police conducted a traffic stop on a car for turning without using its signal.[12]   The driver was Defendant's girlfriend; the passengers were Defendant, Castillo, and Castillo's girlfriend.[13]   The police noticed "a strong smell of marijuana emanating from the vehicle" and asked the driver and passengers to exit.[14]   While patting down Defendant, the police found a pistol, which had been reported stolen from the Amex Pawn Shop on January 19, 2019, and had been used earlier that morning in the taking of the Toyota Matrix.[15]

In April of 2019 a grand jury charged Defendant and Castillo with four counts:   (1) charging both defendants with aiding and abetting in a Hobbs Act robbery of the Amex Pawn Shop in violation of 18 U.S.C. §§ 1951(a) and 2; (2) charging both defendants with aiding and abetting in using, carrying, or brandishing a firearm in relation to a crime of violence — namely, a Hobbs Act robbery — in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2; (3) charging

---

[10]<u>Id.</u> at 6.

[11]<u>Id.</u>

[12]<u>Id.</u>

[13]<u>Id.</u>

[14]<u>Id.</u>

[15]<u>Id.</u>

-3-

Defendant with carjacking the blue 2003 Toyota Matrix with the intent to cause death or serious bodily harm on or about January 29, 2019, in violation of 18 U.S.C. § 2119; and (4) charging Defendant with using, carrying, or brandishing a firearm in relation to a crime of violence — namely, carjacking — in violation of § 924(c)(1)(A)(ii).[16]

Defendant and the Government entered into a written Plea Agreement under Federal Rule of Criminal Procedure 11(c)(1)(A) and/or (B).[17] Defendant agreed to plead guilty to Counts 2 and 4 of the Indictment and "waiv[ed] any right to have the facts that the law makes essential to the punishment either charged in the Indictment, or proved to a jury or proven beyond a reasonable doubt."[18] In exchange, the Government agreed that (a) if Defendant pleaded guilty to Counts 2 and 4 and persisted in that plea through sentencing, and if the court accepted the Plea Agreement, the Government will dismiss any remaining counts of the Indictment at sentencing; and (b) if the court determined that Defendant qualified for a 2-level adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to this adjustment was 16 or greater, the Government will move for an additional 1-level adjustment under § 3E1.1(b).[19]

---

[16]Indictment, Docket Entry No. 1, pp. 1-3

[17]Plea Agreement, Docket Entry No. 79, p. 1.

[18]Id.

[19]Id. at 2 ¶ 4.

Defendant agreed the sentence would be imposed after consideration of the Guidelines, which were only advisory, as well as 18 U.S.C. § 3553(a).[20] He agreed that the court had authority to impose any sentence up to and including the statutory maximum set for the offense to which he pleaded guilty and that the sentence to be imposed was within the sole discretion of the sentencing judge after the court had consulted the applicable guidelines.[21] Defendant stated that he understood and agreed that the parties' positions regarding application of the Guidelines did not bind the court and that the sentence imposed was within the discretion of the sentencing judge.[22] And if the court should impose any sentence up to the statutory maximum, or should the court order any or all of the sentences imposed to run consecutively, Defendant could not — for that reason alone — withdraw a guilty plea, and would remain bound to fulfill all of the obligations under this Plea Agreement.[23]

Defendant confirmed that he was "pleading guilty because he [was] in fact guilty of the charges contained in Counts Two and Four of the indictment."[24] He also confirmed the factual basis for

---

[20]Id. at 3 ¶ 7.

[21]Id. at 4 ¶ 7.

[22]Id.

[23]Id.

[24]Id. at 5 ¶ 9.

his offenses.[25]  Defendant agreed that this written Plea Agreement constituted the "complete plea agreement" between the Government, him, and defense counsel.[26]  The Government, Defendant, and defense counsel signed the agreement.[27]   In the addendum to the Plea Agreement, Defendant agreed that he had consulted with defense counsel and "fully underst[ood]" all his rights.[28]

In September of 2020 the court conducted Defendant's rearraignment, during which he pleaded guilty to Counts 2 and 4 in the Indictment.[29]  The following colloquy took place:

| | |
|---|---|
| THE COURT: | How many times have you talked to your lawyer, Mr. Leonard, about this case? |
| DEFENDANT: | Three or four times, sir. |
| THE COURT: | Has he discussed you -- with you the charges against you in the indictment and what the Government would have to prove to establish your guilt? |
| DEFENDANT: | Yes, your Honor. |
| THE COURT: | Has he discussed with you the evidence that the Government has against you? |
| DEFENDANT: | Yes, your Honor. |
| THE COURT: | Has he discussed with you how the Federal Advisory Sentencing Guidelines might apply in your case? |

---

[25]Id.

[26]Id. at 9-10 ¶¶ 21-22.

[27]Id. at 10.

[28]Plea Agreement--Addendum, Docket Entry No. 79, p. 11.

[29]Transcript of Rearraignment Proceedings ("Rearraignment Transcript"), Docket Entry No. 106, p. 3 lines 17 through 22.

-6-

DEFENDANT:      Yes, your Honor.

THE COURT:      Has your lawyer answered all of your questions?

DEFENDANT:      Yes, your Honor.

THE COURT:      Has he done everything that you have asked him to do?

DEFENDANT:      Yes, sir.

THE COURT:      Are you fully satisfied with the advice and counsel that your lawyer has provided you?

DEFENDANT:      Yes, sir, very.

THE COURT:      Good.  You do not have to plead guilty. You have a right to go to trial.  If you went to trial, you would have the right to the assistance of a lawyer at all stages of the trial.  If you could not afford a lawyer, the Court would appoint a lawyer for you.

                You would have the right at trial to see and hear the Government's witnesses and have your lawyer question them.  You would have the right to compel other people to come into court and provide evidence for you.

                You would not be required to testify at a trial, and you could not be convicted at trial unless the jury unanimously found beyond a reasonable doubt that you were guilty.

                If you plead guilty today, however, there will not be a trial; and you will give up the right to a trial and all the protections that are associated with a trial.

                Do you understand that?

DEFENDANT:      Yes, your Honor.

THE COURT: The sentence that you face if you plead guilty on each count is, at least, seven years in prison to be served consecutively, that is, in addition to one another, which means that the minimum sentence you face if you plead guilty is 14 years in prison together with three years of supervised release on each count; a fine of $250,000 on each count; and a $100 special assessment on each count and restitution in the amount of $6,899.25.

Do you understand that?

DEFENDANT: Yes, your Honor.

THE COURT: In addition, because you're pleading guilty to felony offenses, you will lose the right to vote, hold public office, serve on a jury, and possess a firearm.

Do you understand that?

DEFENDANT: Yes, your Honor.

THE COURT: There is no parole in federal court. That means you'll actually have to serve your sentence in prison.

Your term of supervised release will be subject to a number of conditions that will be monitored by a probation officer. If I found that you violated those conditions, I could revoke your supervised release and send you back to prison without any credit for the time you had already served on supervised release.

Do you understand that?

DEFENDANT: Yes, your Honor.

THE COURT: The Court has not made any decision about what your sentence will be other than what I have explained to you about the statutory minimum.

-8-

If I accept your guilty plea, a probation officer will interview you, investigate the facts of the case, and prepare a presentence investigation report. You will have an opportunity to read the report and to discuss the report with your lawyer before your sentencing. You or the Government may file objections to the presentence report.

At the time of your sentencing, I will rule on any objections; and I will then determine your advisory guideline range and your sentence.

What you need to understand today is that this process of determining your sentence has not yet begun. That means no one knows what advisory guideline range the probation officer will recommend or what advisory guideline range the Court will find applicable or what sentence the Court will impose.

Do you understand that?

DEFENDANT:    Yes, your Honor.

THE COURT:    If the sentence that I impose is greater than the sentence that you now expect or greater than the sentence that your lawyer or anyone else may have predicted, you will be bound by your guilty plea today regardless of your sentence.

You will not be allowed to change your mind and withdraw your guilty plea because you're not satisfied with your sentence.

Do you understand that?

DEFENDANT:    Yes, your Honor.

THE COURT:    The Government has provided the Court with a written plea agreement. Have you read the agreement?

DEFENDANT:    Yes, your Honor.

-9-

THE COURT:      When did you read it?

DEFENDANT:      Yesterday.

THE COURT:      Have you talked to your lawyer about it?

DEFENDANT:      Yes, your Honor.

THE COURT:      When did you talk to your lawyer about it?

DEFENDANT:      Today and yesterday, sir.

THE COURT:      How much time altogether would you estimate that you spent talking to your lawyer about the plea agreement?

DEFENDANT:      About three hours; two and a half hours, sir.

THE COURT:      Did he answer all of the questions you had about it?

DEFENDANT:      Yes, your Honor.

Rearraignment Transcript, Docket Entry No. 106, p. 7 line 23 through p. 12 line 9.

The court then described the terms of the Plea Agreement as they are summarized above, and Defendant agreed that the court had correctly described the Plea Agreement as he understood it.[30]  Then the following colloquy took place:

THE COURT:      Has the Government made any promises to you other than those stated in the plea agreement?

DEFENDANT:      No, your Honor.

THE COURT:      Has anyone threatened you or forced you to plead guilty?

---

[30]Rearraignment Transcript, Docket Entry No. 106, p. 12 line 12 through p. 13 line 7.

-10-

| DEFENDANT: | No, sir. |
|---|---|
| THE COURT: | Has the Government told you what sentence you will receive if you plead guilty? |
| DEFENDANT: | No, your Honor. |
| THE COURT: | Has your lawyer or anyone else told you what sentence you will receive if you plead guilty? |
| DEFENDANT: | No, your Honor. |

Id. at 13 lines 8 through 19.

The court then set forth the elements of the charges to which Defendant was pleading guilty and referred to the portion of the Plea Agreement that set forth the factual basis for the plea.[31] Defendant stated that he had carefully read these portions of the agreement, that all the facts stated in those pages were true, and that he did everything described in those pages.[32] Defendant stated that he used an Airsoft BB gun pistol for the January 19 robbery and used one of the guns stolen from the Amex Pawn Shop for the carjacking.[33]  Defendant then pleaded guilty to Counts 2 and 4.[34]

Using the 2018 Sentencing Guidelines, the probation officer determined Defendant's offense level.[35]  The probation officer

---

[31]Id. at 13 line 20 through 14 line 22.

[32]Id. at 14 line 23 through 15 line 5.

[33]Id. at 15 lines 6-24.

[34]Id. at 16 lines 3-5.

[35]Presentence  Investigation  Report  ("PSR"),  Docket  Entry No. 84, p. 10 ¶ 34.

-11-

determined that for both Counts 2 and 4 Defendant was subject to a mandatory term of not less than 7 years' imprisonment, to run consecutively to any other sentence under § 924(c)(1)(A)(ii).[36] Defendant therefore was subject to an effective statutory-minimum term of 14 years' imprisonment.[37] Defendant's Guidelines range was the statutory-minimum term of 14 years' imprisonment.[38] Neither party objected to the PSR.[39]

In December of 2020 the court conducted Defendant's sentencing.[40] The court confirmed that Defendant had no objections to the PSR.[41] It then adopted the PSR and found that Defendant was subject to a statutory-minimum term of 14 years' imprisonment, based on "a seven-year term on each count to be served consecutively[.]"[42] Following Defendant's allocution, the court imposed a sentence of 168 months' imprisonment – 84 months as to Count 2 and 84 months as to Count 4, to be served consecutively.[43]

---

[36]Id. at 17 ¶ 59.

[37]Id.

[38]Id. ¶ 60.

[39]Defendant's Statement Regarding Presentence Investigation, Docket Entry No. 82, p. 1; Government's Statement of No Objections to PSI Report, Docket Entry No. 83, p. 1.

[40]Sentencing Hearing – Official Reporter's Transcript of Proceedings, Docket Entry No. 101.

[41]Id. at 3 lines 3-6.

[42]Id. lines 17-18.

[43]Id. at 4 line 22 through 5 line 3.

-12-

The Government moved to dismiss Counts 1 and 3 in accordance with the Plea Agreement, which the court granted.[44]   The court imposed judgment on December 21, 2020, which the clerk entered on December 23, 2020.[45]

Defendant timely appealed.[46]   The Fifth Circuit dismissed the appeal as frivolous.[47]   Defendant's counsel moved for leave to withdraw and filed a brief in accordance with <u>Anders v. California,</u> 386 U.S. 738 (1967), and <u>United States v. Flores,</u> 632 F.3d 229 (5th Cir. 2011); and the Fifth Circuit granted the motion upon finding that "the appeal presents no nonfrivolous issue for appellate review."[48]

On November 23, 2021, Defendant timely mailed his § 2255 Motion to the court.[49]   The Government filed its response on March 17, 2022.[50]

## II.   <u>Standard of Review</u>

The Sixth Amendment guarantees each criminal defendant "the Assistance of Counsel for his defence."   U.S. CONST. amend. VI.

---

[44]<u>Id.</u> at 8 line 23 through 9 line 4.

[45]Judgment in a Criminal Case ("Judgment"), Docket Entry No. 90.

[46]Notice of Appeal, Docket Entry No. 92.

[47]Judgment issued by the United States Court of Appeals for the Fifth Circuit, Docket Entry No. 110.

[48]Order of USCA Per Curiam, Docket Entry No. 111, pp. 1-2.

[49]Envelope, attached to Defendant's Motion, Docket Entry No. 112, p. 14.

[50]Government's Response, Docket Entry No. 118.

Courts have long accepted that this is a right to "'the <u>effective</u> assistance of counsel.'" <u>United States v. Gonzalez,</u> 943 F.3d 979, 983 (5th Cir. 2019) (quoting <u>McMann v. Richardson,</u> 90 S. Ct. 1441, 1449 (1970)) (emphasis in <u>Gonzalez).</u>  A criminal defendant in federal custody claiming ineffective assistance of counsel may vindicate his Sixth Amendment rights by way of a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.  If the court concludes that the prisoner's motion is meritorious, it must "vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).

A defendant's ineffective-assistance claim is analyzed under the two-part test set forth in <u>Strickland v. Washington,</u> 104 S. Ct. 2052 (1984).  To prevail under the <u>Strickland</u> standard, a defendant must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  <u>Hinton v. Alabama,</u> 134 S. Ct. 1081, 1088 (2014).  If a movant fails to meet one of these tests, the court need not inquire whether the movant has met the other.  <u>See United States v. Bejarano,</u> 751 F.3d 280, 285 (5th Cir. 2014) ("'Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.'") (quoting <u>Strickland,</u> 104 S. Ct. at 2071).

-14-

To demonstrate deficient performance "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 104 S. Ct. at 2064. This is a "highly deferential" inquiry in which "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 2065 and 2066. To overcome this presumption a defendant must identify acts or omissions of counsel that were not the result of reasonable professional judgment. Id. at 2066.

Even assuming that a defendant can demonstrate error by his counsel, he must still demonstrate the requisite prejudice in order to prevail. See id. ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."). To establish prejudice under Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 2068.

A prisoner seeking relief under 28 U.S.C. § 2255 "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. United States v. Frady, 102 S. Ct. 1584, 1593 (1982). After a defendant has been convicted and has exhausted or waived any right to appeal, a court is normally "entitled to presume that the defendant stands fairly and finally convicted."

-15-

United States v. Willis, 273 F.3d 592, 595 (5th Cir. 2001)
(citations omitted).

A prisoner's pro se motion is reviewed under a less stringent
standard than a motion drafted by an attorney. See Haines v.
Kerner, 92 S. Ct. 594, 596 (1972). However, a pro se litigant must
still provide sufficient facts in support of his claims.
United States v. Pineda, 988 F.2d 22, 23 (5th Cir. 1993). Even
under liberal construction, "mere conclusory allegations on a
critical issue are insufficient to raise a constitutional issue."
Id. (internal quotation marks and citation omitted). Accordingly,
"[a]bsent evidence in the record, a court cannot consider a habeas
petitioner's bald assertions on a critical issue in his pro se
petition . . . to be of probative evidentiary value." Ross v.
Estelle, 694 F.2d 1008, 1011 (5th Cir. 1983) (citation omitted)
(emphasis in original).

## III.  Discussion

Defendant argues in his § 2255 Motion that

[i]n 2018, Congress eliminated stacking of consecutive
sentences for first time offenders who are charged and
convicted of multiple § 924(c) counts.  Section 403 of
the First Step Act of 2018 (FSA) amended § 924(c) to
provide that the consecutive term for a successive
§ 924(c) offense does not apply unless the defendant had
a previous, final conviction for a § 924(c) charge at
the time of the offense.  The petitioner is a first time
offender, that doesn't have any prior 924(c) conviction,
therefore making his consecutive 84 month sentences
unlawful.

Defendant's Motion, Docket Entry No. 112, p. 4.

-16-

Defendant argues that his trial and appellate counsel were deficient because they failed to object or make an argument based on Section 403 of the First Step Act.[51] But this penalty provision did not apply to Defendant's case, and therefore any objection or argument by his counsels on this ground would have been meritless.

Section 403 of the First Step Act "amended 18 U.S.C. § 924(c)(1)(C)(i), the provision that imposes a 25-year minimum sentence for repeat firearms offenders, to reduce the severity of 'stacked' charges." United States v. Gomez, 960 F.3d 173, 176 (5th Cir. 2020). "Before the Act, the 25-year minimum was triggered by any 'second or subsequent conviction under this subsection.'" Id.; see Pub. L. 115-391, 132 Stat. 5194 (2018). After the Act, the 25-year minimum is "triggered only by a repeat 'violation . . . that occurs after a prior conviction under this subsection has become final.'" Id. Following the First Step Act, the relevant provision states:

> (C)  In the case of a <u>violation of this subsection that occurs after a prior conviction under this subsection has become final,</u> the person shall--
>
> (i)  be sentenced to a term of imprisonment not less than 25 years;

18 U.S.C. § 924(c)(1)(C)(i) (emphasis added).

The practical effect of this change was that "the 25-year repeat-offender minimum no longer applies where a defendant is charged simultaneously with multiple § 924(c)(1) offenses. Now,

---

[51] <u>Id.</u>

to trigger the 25-year minimum, the defendant must have been convicted of a § 924(c)(1) offense in a prior, separate prosecution." Gomez, 960 F.3d at 176-77 (citing United States v. Jordan, 952 F.3d 160, 171 (4th Cir. 2020)).

Section 403 of the First Step Act is inapplicable to Defendant's case because for Counts 2 and 4 he was sentenced under a different penalty provision: § 924(c)(1)(A)(ii).[52] This provision mandates that any person who brandishes a firearm in relation to a crime of violence "shall" receive a consecutive minimum sentence of 7 years' imprisonment. For Defendant this minimum sentence applied to both Counts 2 and 4, yielding a total sentence of 14 years' imprisonment. Moreover, the minimum sentences prescribed by § 924(c)(1)(A) do not apply if "a greater minimum sentence is otherwise provided by law[.]" Because a consecutive statutory-minimum sentence of 7 years' imprisonment under § 924(c)(1)(A)(ii) was applied in Defendant's case, the statutory-minimum sentence of 25 years' imprisonment under § 924(c)(1)(C)(i) evidently did not apply. Defendant's case did not implicate Section 403 of the First Step Act or the 25-year mandatory minimum sentence prescribed by § 924(c)(1)(C)(i), which the First Step Act amended. Any objection or argument on that ground would have been meritless.

---

[52]See Indictment, Docket Entry No. 1, pp. 2-3; Judgment, Docket Entry No. 90, p. 1; PSR, Docket Entry No. 84, p. 17 ¶ 59.

Defendant therefore cannot establish either deficiency or prejudice with his motion. Counsel is not deficient for failing to raise a meritless objection. <u>United States v. Fields,</u> 565 F.3d 290, 296 (5th Cir. 2009); <u>Sones v. Hargett,</u> 61 F.3d 410, 415 n.5 (5th Cir. 1995). "An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." <u>United States v. Kimler,</u> 167 F.3d 889, 893 (5th Cir. 1999).

No evidentiary hearing is required because the files, motion, and record of the case conclusively show that no relief is appropriate. <u>See United States v. Santora,</u> 711 F.2d 41, 42 (5th Cir. 1983). Therefore, the court will deny Defendant's Motion and grant summary judgment for the Government. <u>See United States v. Batamula,</u> 823 F.3d 237, 239 (5th Cir. 2016).

No certificate of appealability ("COA") shall issue because Defendant has not "made a substantial showing of the denial of a constitutional right." <u>See</u> 28 U.S.C. § 2253(c)(2). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" <u>Buck v. Davis,</u> 137 S. Ct. 759, 773 (2017). The court concludes that reasonable jurists could not disagree with the denial of Defendant's Motion and that the motion does not raise

-19-

issues adequate to deserve encouragement for further consideration. Therefore, the court **DENIES** a certificate of appealability.

### IV. <u>Conclusion and Order</u>

For reasons stated above, Defendant Robino Sixto Ortiz-Odums' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Docket Entry No. 112) is **DENIED**; and the corresponding civil action will be dismissed with prejudice.

**SIGNED** at Houston, Texas, on this the 27th day of April, 2022.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE